UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YANIRA F. D. OBO H.J.G.F., § § Plaintiff, § § v. § § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:20-cv-1692-DB  MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Yanira F.D. ("Plaintiff") brings this action on behalf of H.J.G.F., a child under the age of eighteen, pursuant to Title XVI of the Social Security Act (the "Act"). Plaintiff seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying H.J.G.F.'s application for supplemental security income ("SSI"). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 12. Plaintiff also filed a reply. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion (ECF No. 10) is **DENIED**, and the Commissioner's motion (ECF No. 12) is **GRANTED**.

## BACKGROUND

On February 6, 2017, Plaintiff protectively filed an application for SSI child's benefits on behalf of her minor son, H.J.G.F., alleging disability beginning February 6, 2017, due to attention deficit hyperactivity disorder ("ADHD"). Transcript ("Tr.") 18, 133-141, 153. The application was initially denied on September 6, 2017, after which Plaintiff timely requested a hearing. Tr. 18.

On July 10, 2019, Administrative Law Judge Stephan Ball (the "ALJ") conducted a hearing in Buffalo, New York. Tr. 17, 41-54. Plaintiff and H.J.G.F. appeared and testified at the hearing with the assistance of a Spanish interpreter. Tr. 18. Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. *Id*.

The ALJ issued an unfavorable decision on October 8, 2019 finding that H.J.G.F. was not disabled. Tr. 18-34. On September 25, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's October 8, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

Individuals under eighteen years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe

2

functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). In evaluating disability claims in children, the Commissioner is required to use the three-step process promulgated in 20 C.F.R. § 416.924. The first step requires the ALJ to determine whether the child is engaged in "substantial gainful activity." *See* 20 C.F.R. § 416.924(a). The second step requires the ALJ to determine whether the child has any severe impairments, defined as anything that causes "more than minimal functional limitations." *Id*. Finally, the ALJ determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. *Id*. If the ALJ finds that the child's impairment or combination of impairments meets or equals a listing, the child is then considered disabled. 20 C.F.R. §§ 416.924(d)(1).

In determining whether the child's impairment or combination of impairments meets or medically equals a listing, the ALJ must assess the child's functioning in six domains:

    1. Acquiring and using information;

    2. Attending and completing tasks;

    3. Interacting and relating with others;

    4. Moving about and manipulating objects;

    5. Caring for yourself; and

    6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation exists when the impairment or cumulative effect of the impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or

complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). If the child has an impairment that meets, and medically or functionally equals the listings, and the impairment meets the Act's duration requirement, the ALJ will find the child disabled. 20 C.F.R. § 416.924(d).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed H.J.G.F.'s claim for benefits under the process described above and made the following findings in her October 8, 2019 decision:

1. The claimant was born on July 10, 2006. Therefore, he was a school-age child on February 6, 2017, the date the application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since February 6, 2017, the application date (20 CFR 416.924(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: unspecified attention deficit hyperactivity disorder ("ADHD"); learning disability; and obstructive sleep apnea (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since February 6, 2017, the date the application was filed (20 CFR 416.924(a)).

Tr. 18-34.

Accordingly, the ALJ determined that, for the application for SSI protectively filed on February 6, 2017, H.J.G.F. is not disabled under section 1614(a)(3)(C) of the Act. Tr. 34.

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff argues that: (1) the ALJ failed to adhere to her duty to properly develop the record with missing education records; and (2) the ALJ failed to properly consider the effects of H.J.G.F.'s placement in a structured and supportive setting on his functioning. *See* ECF No. 10-1 at 1, 8-18.

The Commissioner argues in response that: (1) the ALJ adequately developed the record, including requesting educational records and a teacher questionnaire from H.J.G.F.'s school, as well as records from the Adult & Pediatric Sleep Center.; and (2) The ALJ properly considered H.J.G.F.'s need for a structured and supportive environment when evaluating his functioning. *See* ECF No. 12-1 at 8-19.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record and the ALJ's decision, the Court finds that the ALJ very thoroughly considered all the evidence in the record in evaluating H.J.G.F.'s functioning. The ALJ recognized that H.J.G.F. had certain learning impairments, but reasonably concluded that the evidence in the record, including a teacher questionnaire, reports from H.J.G.F.'s participation in an individual education plan ("IEP"), and the assessments of a consultative examining psychologist and state agency pediatric consultant, as well as Plaintiff's statements regarding H.J.G.F.'s functioning, did not support "marked limitations" in any of the six domains. Tr. 28-33.

Plaintiff specifically challenges the ALJ's findings with respect to the domains of acquiring and using information and attending and completing tasks. *See* ECF No. 10-1 at 16-18. However, as discussed further below, the ALJ properly considered all the evidence in the record, and ample evidence of record supports the ALJ's findings that H.J.G.F. had less than marked limitations in these two domains.

    **a) Acquiring and using information domain.**

First, the ALJ reasonably found that H.J.G.F. had a less than marked limitation in the domain of acquiring and using information. Tr. 28-29. The domain of acquiring and using information addresses how well a child learns information and how well the child uses the information learned. 20 C.F.R. § 416.926a(g). The Regulations provide that a school-aged child should be able to read, write, do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv). The child should also be able to use "increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [his] own ideas, and by understanding and responding to the opinions of others." *Id*. Further, the child should be able to read about subjects, produce oral and written projects, solve math problems, take achievement tests, do group work, and enter into class discussions. *Id*. Finally, the child should be able to "use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change)." *Id*.

The Regulations further indicate that an adolescent child should continue to demonstrate what he has learned in academic assignments; use what he has learned in daily living situations without assistance; understand and express both simple and complex ideas; use increasingly complex language in learning and in daily living situations; and apply those skills in practical ways

6

that will help him enter the workplace after finishing school (such as by carrying out instructions). 20 C.F.R. § 416.926a(g)(2)(v).

Here, substantial evidence supports the ALJ's finding that H.J.G.F. had less than a marked limitation in the domain of acquiring and using information. Tr. 28-29. In making this finding, the ALJ first considered the August 2019 teacher questionnaire completed by H.J.G.F.'s special education teacher Deanna Ingraham ("Ms. Ingraham"). Tr. 243-50. Ms. Ingraham stated she had known H.J.G.F. for ten months and saw him every school day for ELA, Math, Science, and Social Studies. Tr. 243. She also stated that H.J.G.F.'s was grade 6, but he had a 2.5 grade reading level and a 1.8 grade math level. *Id*.

Ms. Ingraham assessed a very serious problem with comprehending and doing math problems and a serious problem with understanding school and content vocabulary, providing organized oral explanations and adequate descriptions, and recalling and applying previously learned material. Tr. 244. However, she found that H.J.G.F. only had slight problems in comprehending oral instructions, understanding and participating in class discussions, and learning new material. *Id*. She stated that although H.J.G.F. had difficulty with vocabulary, relaying information, and putting new information to use, he worked hard to listen and participate. *Id*. Therefore, the ALJ properly found that, while Ms. Ingraham's opinion was consistent with a finding that H.J.G.F. had some functional limitations, his limitations did not seriously interfere with his ability to engage in day-to-day activities or rise to a marked level. Tr. 27.

The ALJ's finding of less than marked limitations in this domain is also consistent with the July 2017 opinion of psychological consultative examiner Gregory Fabiano, Ph,D, ("Dr. Fabiano") Tr. 26, 29. Dr. Fabiano's examination included both an intelligence evaluation and a psychiatric evaluation. Tr. 265-74. As the ALJ noted, Dr. Fabiano opined that H.J.G.F. appears to have

7

moderate limitations in his ability to attend to, follow, and understand age-appropriate directions, sustain concentration, and complete age-appropriate tasks; and mild to moderate limitations in his ability to adequately maintain appropriate social behavior. Tr. 26, 268. However, he opined that H.J.G.F. had no limitations in his ability to learn in accordance with cognitive functioning, ask questions, and request assistance in an age-appropriate manner. Tr. 26, 29, 268. Dr. Fabiano's opinion is supported by his examination findings indicating that H.J.G.F. maintained appropriate eye contact; had a cooperative and friendly attitude; understood and recalled instructions; and had a deliberate, orderly, and self-correcting style of responding. Tr. 26, 267. Additionally, H.J.G.F. had age-appropriate receptive and expressive language skills. Tr. 26, 272.

The ALJ also noted that her finding that H.J.G.F. had less than marked limitations in this domain is consistent with school records indicating that, although H.J.G.F. had limitations in reading, writing, and math, he saw gradual improvement in reading and writing, his adaptive functioning was intact, and he could participate and engage in class. Tr. 29, 268, 336-60. For example, in his April 2019 progress summary, H.J.G.F. was noted to be "gradually progressing" with his goals in reading and writing, although his math progress was noted as "inconsistently progressing." Tr. 340.

The ALJ's finding of less than marked limitations in the domain of acquiring and using information is also consistent with the prior administrative findings of state agency medical consultant B. Stouter, M.D. ("Dr. Stouter"), who considered how well H.J.G.F. performed activities in a structured or supportive settings (including comparison of functioning in and outside of those settings). Tr. 67. Dr. Stouter found, after reviewing the evidence of record on September 5, 2017, that H.J.G.F. had less than a marked limitation in the area of acquiring and using information. Tr. 29, 64, 67. The ALJ reasonably gave great weight to Dr. Stouter's opinion,

8

because it was generally consistent with the evidence in H.J.G.F.'s school and treatment records, as well as the opinions of Dr. Fabiano and Ms. Ingraham. Tr. 27. *See* 20 C.F.R. §416.920c(c)(2) (explaining that the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be found); *see also Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (holding that an ALJ appropriately relied on the report of a state agency doctor, who specifically assessed whether the child's impairments met or equaled a listed impairment). Based on the foregoing, the ALJ reasonably found that H.J.G.F. demonstrated a less than marked limitation in the domain of acquiring and using information, and her finding was supported by substantial evidence. Tr. 29.

### b) Attending and completing tasks domain.

Substantial evidence also supports the ALJ's finding that H.J.G.F. had less than a marked limitation in the domain of attending and completing tasks. This domain addresses how well a child is able to "focus and maintain [] attention, and how well" the child begins, carries through, and finishes his activities, including the pace at which he performs activities and how easily he can change activities. 20 C.F.R. § 416.926a(h)(iv). The Regulations provide that a school-aged child should be able to focus his attention in a variety of situations to follow directions, remember and organize his school materials, and complete classroom and homework assignments. *Id*. The child should also be able to concentrate on details and not make careless mistakes in his work, other than mistakes that other children his age, who do not have impairments, would make. *Id*. Further, the child should be able to change his activities or routines without distracting himself or others, and stay on task and in place when appropriate; he should be able to sustain attention well enough to participate in group sports, read by himself, and complete family chores; and should be

able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. *Id*.

The Regulations also provide that an adolescent child should be able to pay attention to increasingly longer presentations and discussions; maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. 20 C.F.R. § 416.926a(h)(v). Further, the adolescent child should also be able to organize his materials and plan his time to complete school tasks and assignments; and finally, he should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by his peers, or unduly distract his peers in a school or work setting. *Id*.

In finding that H.J.G.F. had less than a marked limitation in this domain, the ALJ again considered the opinion of Ms. Ingraham, who opined that H.J.G.F. had very serious problems in the areas of focusing long enough to finish an assigned activity or task; refocusing to task when necessary; completing class/homework assignments; and working at a reasonable pace/finishing on time; and an obvious problem carrying out multi-step problems, completing work accurately without careless mistakes; and working without distracting himself and others. Tr. 30, 245. However, Ms. Ingraham found that H.J.G.F. had no problems paying attention when spoken to directly; sustaining attention during play/sports activities; carrying out single-step instructions; waiting to take turns; changing from one activity to another without being disruptive; and only a slight problem organizing his things or school materials. *Id*.

The ALJ's finding of less than marked limitations was also supported by Dr. Stouter's opinion that H.J.G.F. had less than a marked limitation in the domain of attending and completing tasks. Tr. 30, 65. Notably, Dr. Stouter cited Dr. Fabiano's report and opinion of moderate limitations in H.J.G.F.'s ability to sustain concentration, as well as mild impairments in recent and

10

remote memory skills. Tr. 64-65, 272; *see* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

The ALJ's finding that H.J.G.F. had less than marked limitations in this domain is also supported by the opinion of Dr. Fabiano, who found that H.J.G.F. had moderate limitations in his ability to attend to, follow, and understand age-appropriate directions, sustain concentration, and complete age-appropriate tasks. Tr. 30, 273. Additionally, the ALJ's finding of less than marked limitations in this domain is consistent with Dr. Fabiano's opinion that H.J.G.F. had no limitations in his ability to learn, ask questions, and request assistance in an age-appropriate manner. Tr. 26, 29, 268.

Finally, the ALJ's finding that H.J.G.F. had less than marked limitations in this domain is also consistent with school records indicating that although H.J.G.F. had some learning difficulties, he also showed some—albeit slow—progress, and he worked hard and finished all tasks given to him and turned them in on time. Tr. 30, 340, 343, 350. Therefore, as with the domain of acquiring and using information, the ALJ reasonably concluded that this evidence showed that H.J.G.F. demonstrated a less than marked limitation in the domain of attending and completing tasks. Tr. 30.

Thus, substantial evidence of record supports the ALJ's finding, and while Plaintiff may disagree with the ALJ's conclusions in this domain, her mere disagreement with the ALJ's findings does not warrant remand. Even if the evidence demonstrated some limitation in this domain, that would not be enough, as Plaintiff must produce evidence showing marked, *i.e.*, more than moderate, limitation in at least two functional domains. *See* 20 C.F.R. §§ 416.926a(d); see also *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (holding that the

Commissioner's findings of fact are conclusive and must be upheld unless "a reasonable factfinder would *have to conclude otherwise*."). The question is not whether there is evidence to support disability; it is whether there is "more than a scintilla" of evidence supporting the ALJ's decision. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). As discussed above, there is such evidence.

Plaintiff's first point of error argues that the ALJ failed to consider H.J.G.F.'s degree of functioning outside of his structured and supportive environment, and this error was not harmless because it led the ALJ to find Ms. Ingraham's teacher questionnaire "consistent with less than marked limitations rather than marked or extreme limitations." *See* ECF No. 10-1 at 17. Contrary to Plaintiff's argument, however, the ALJ's decision reflects that she considered the totality of the record evidence, and her detailed analysis of the relevant evidence, as discussed above, demonstrated her comprehensive consideration of all the evidence in the record. Plaintiff's arguments amount to nothing more than an invitation for this Court to reweigh the evidence in a manner more favorable to her—arguments that are insufficient under the substantial evidence standard of review. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision."). Plaintiff's argument, therefore, fails.

Plaintiff also argues—incorrectly—that because Ms. Ingraham's teacher questionnaire indicated that H.J.G.F. "had marked limitations with acquiring and using information and completing and attending tasks," his impairments would functionally equal a listing had the ALJ considered H.J.G.F.'s functioning outside of a structured and supportive setting. *See* ECF No. 10-1 at 18. Despite Plaintiff's argument, it is simply not accurate that Ms. Ingraham assessed marked limitations in the domains of acquiring and using information and attending and completing tasks.

Rather, she found some "obvious" to "very serious" problems within these domains, but her findings as a whole support the ALJ's finding that H.J.G.F. had less than marked limitations in these domains. For example, as noted above, Ms. Ingraham assessed no problems paying attention when spoken to directly; sustaining attention during play/sports activities; carrying out single-step instructions; waiting to take turns; changing from one activity to another without being disruptive; and only a slight problem organizing his things or school materials; as well as only slight problems in comprehending oral instructions, understanding and participating in class discussions, and learning new material. Tr. 29, 244. She also stated that, although H.J.G.F. had difficulty with vocabulary, relaying information, and putting new information to use, he worked hard to listen and participate. Tr. 30, 245. Accordingly, the ALJ properly found that Ms. Ingraham's teacher questionnaire supported the ALJ's finding of less than marked limitations in this domain.

Likewise unavailing is Plaintiff's argument that the ALJ "failed to acknowledge that Ms. Ingraham's findings that H.J.G.F. had a 'very serious problem' and 'serious problems' in numerous functions was completed in the context of his highly structured 15:1 and 12:1+1 classroom settings." *See* ECF No. 10-1 at 17. The form completed by Ms. Ingraham expressly instructs the evaluator to "compare [H.J.G.F.'s] functioning to that of same-age children who do not have impairments." Tr. 243. The Court notes that the above-quoted language is under a heading labeled "IMPORTANT" and is in underlined and bold typeset. *See id*. Thus, the Court cannot accept Plaintiff's characterization of Ms. Ingraham's evaluation.

Furthermore (also contrary to Plaintiff's argument), the ALJ expressly considered how H.J.G.F. "functions in all settings and at all times, as compared to other children the same age who do not have impairments." Tr. 23. The ALJ specifically discussed and considered that H.J.G.F. was placed under an IEP and was also placed in a 15:1 classroom for English language arts, social

studies, and vocational studies, but a 12:1+1 for math and science because a high level of support was needed. Tr. 24, 338-39. Moreover, as previously noted. Dr. Stouter likewise considered H.J.G.F.'s functioning in structured versus unstructured settings in assessing H.J.G.F.'s functional limitations and determined that H.J.G.F. had less than marked limitations in all the domains. Tr. 67-68. Notably, Plaintiff does not argue any specific deficiency in the ALJ's analysis, other than her incorrect assertion that the ALJ did not consider H.J.G.F.'s functioning outside of his classroom, which is unavailing. 20 C.F.R. § 416.924a(b)(7)(iv) ("The fact that you do or do not receive special education services does not, in itself, establish your actual limitations or abilities."). Accordingly, Plaintiff's argument is meritless, and the Court finds no error.

Plaintiff's second point of error argues that the ALJ failed to adhere to her heightened duty to develop the record with missing education records, particularly in light of Plaintiff's *pro se* status at the time of the hearing and decision. *See* ECF No. 10-1 at 8, 10. Specifically, Plaintiff argues that, although the ALJ requested and received records from H.J.G.F.'s school, the school did not send "any special education, counseling, or speech therapy progress reports, grade reports other than the third quarter of 2018-2019 school year, counseling records other than the April 2019 summary report, or IEPs for the 2017-2018 and 2018-2019 school years," and the ALJ should have developed the record further; and her failure to do so created a gap in the record. *See id*. at 11.

A court must first "be satisfied that the ALJ provided plaintiff with a full hearing under the [SSA]'s regulations and also fully and completely developed the administrative record" before it can consider whether substantial evidence supports the ALJ's decision. *Calhoun v. Comm'r of Soc. Sec.*, No. 18-CV-6070-FPG, 2019 WL 1949743, at *3 (W.D.N.Y. May 2, 2019) (citing *Leutung*, 2019 WL 1385847, *3 (quotation marks and citations omitted). Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Id*. (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.

1996). On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ does not have to seek additional evidence. *Id*. (citing *Rosa*, 168 F.3d at 79 n.5).

The Court finds that the ALJ adequately developed the record in this case, and there are no obvious gaps in the record. The ALJ requested records from H.J.G.F.'s school (Emmet Belknap Intermediate School) (Tr. 223-25) and Buffalo Medical Group, PC Adult & Pediatric Sleep Center (Tr. 216-17); as well as a teacher questionnaire from Emmet Belknap Intermediate School (227-37). In response, the ALJ received a sleep study report from Buffalo Medical Group, PC Adult & Pediatric Sleep Center (Tr. 332-33); the teacher questionnaire completed by Ms. Ingraham (Tr. 243-50); an IEP for the 2019-2020 school year (Tr. 336-48); a psychological reevaluation (Tr. 350-60); speech and language reevaluations from October 2017 (Tr. 349); and an autism evaluation completed in 2018 (Tr. 350-52). Other than Plaintiff's own speculation, there is no evidence of the existence of additional school records beyond what the ALJ received in response to her requests. Thus, the ALJ had a complete record before her and was not obligated to seek out additional records. *See Rosa*, 168 F.3d at 79; *see also Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996); *Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record").

Further, as previously noted, the ALJ is not required to develop the record "in the absence of any obvious gaps or inconsistencies" in the record for the period relevant to the contested disability. *O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014). A challenge that the record must be supplemented by the ALJ will not prevail without an explanation of "how it would have

affected [the] case." *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013). In this case, Plaintiff has provided no evidence that, even assuming, *arguendo* these alleged missing records exist, they would have changed the ALJ's decision regarding H.J.G.F.'s disability.

As previously stated, the ALJ had adequate evidence to consider, including Ms. Ingraham's teacher questionnaire, IEP reports and/or summaries from the 2016, 2017, and 2019-2020 school years, as well as the assessments of a consultative examining psychologist and state agency medical consultant, and finally, Plaintiff's statements regarding H.J.G.F.'s functioning. Tr. 24, 41-54, 60-68, 159, 164, 166, 243-50, 266-74, 338-39. *See Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012) (holding that the ALJ was not required to further develop the record when the available evidence was adequate to determine that the claimant was not disabled).

Plaintiff also argues that the ALJ's "failure to adhere to her heightened duty to develop the record was harmful because the opinion evidence analysis and credibility analysis cannot be said to be supported by substantial evidence in light of the missing records" and that, based on the purported missing records, the ALJ was unable to determine the consistency of Drs. Fabiano and Stouter's opinions with H.J.G.F.'s school records. *See* ECF No. 10-1 at 13. This argument is similarly unavailing. As discussed above, other than Plaintiff's speculative assertions, there is no evidence that there was any evidence missing from the record, or that, even if certain records were missing, it would have changed the ALJ's decision regarding disability.

As discussed above, Plaintiff's mere disagreement with the ALJ's findings does not warrant remand. The Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris*, 2018 WL 459678, at \*3 (internal citations and quotations omitted). That is not the case here. The ALJ reasonably determined that H.J.G.F. did not have two marked limitations or one

extreme limitation in functioning. The Court accordingly finds no error in the ALJ's determination that H.J.G.F. is not disabled.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE